IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. PWG-19-0214 |
| | : | |
| DOUGLAS AMILCAR-VASQUEZ, | : | |
| | : | |
| *Defendant* | : | |

........oOo........

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its undersigned attorney, respectfully submits this memorandum in aid of sentencing for the above-named defendant.

On December 1, 2020, the defendant, **DOUGLAS AMILCAR-VASQUEZ**, pled guilty to Counts Two and Three of the Superseding Indictment, charging him with interference of interstate commerce by robbery, in violation of 18 U.S.C. § 1951, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), respectively. Ultimately, the government believes that a guidelines sentence of 63 months imprisonment on Count Two and 84 months imprisonment on Count Three is an appropriate disposition and respectfully request that the Court impose that sentence.

    C.    **Section 3553(a) factors**

        *1. Nature and Circumstances of the Offenses*

The government believes that the instant offense is extremely serious. On February 16, 2019, the defendant and co-defendant, Ever Ramiro Torres Enriquez ("Torres"), executed a well-planned, and very successful, robbery of a Jewelry store in Takoma Park, Maryland. Unlike many

1

robberies in Prince George's County that result in very little proceeds, the defendant and Torres stole approximately $7,900 in cash and jewelry valued at $167,067.

Given the nature of the robbery, it was clearly a well-thought out and highly orchestrated robbery, designed to surprise and overwhelm the store employees and the customers. *See* PSR at ¶ 8-13. The defendant and Torres entered the store under the guise of being customers in order to surprise their victims. Once in position, they drew weapons—a rifle and a 9mm pistol hidden in their clothing—to maximize the threat of violence and ensure anyone in the store would comply with their robbery demands. The defendants' tactics were successful, not just in terms of the proceeds they recovered, but their plan to place people in fear of violence and death was highly effective. They did not just carry weapons into the store, the used them—pointing the firearms at their victims and putting the firearms in their faces to maximize the effect.

Apparently, the only hole in their plan was the getaway. In order to effect their escape, the defendant and Torres used their firearms a second time—this time to carjack a getaway vehicle from two males who happened to be in a car in close proximity to the store.

Once the robbery was completed, the defendant brought his relatives into the conspiracy by having them pawn some of the stolen jewelry. The defendant encouraged others to engaged in criminal conduct, presumably, so the defendant could deflect suspicion away from himself.

### 2. History and Characteristics of the Defendant

The defendant's criminal history is disconcerting. Most troubling, obviously, is that the instant offense is not the defendant' first robbery conviction. In 2007, the defendant perpetrated a robbery while a passenger on a Metro bus. During the robbery, the defendant brandished a 12-inch knife on a public bus when the victim refused to give the defendant $5. *See* PSR at ¶ 34. The

defendant also has a 2007 conviction for tampering and resisting arrest. Although the defendant's sentence was suspended, he was ordered removed to Mexico. *See* PSR at ¶ 33.

The defendant's criminal history is even more troubling given that the defendant has no status in the United States and has been removed multiple times. Not only was the defendant ordered removed in 2007, but he was convicted of illegal reentry in 2007—in this Courthouse—and in 2017 in Texas, which means the defendant came back into the country illegally again prior to committing the instant offense. *See* PSR at ¶ 35-36. Even worse, the defendant received significant sentences for his violation of 8 U.S.C. § 1326—18 months and 27 months respectively—but continued to enter illegally and commit serious criminal offenses.

### 3. The Need for Deterrence

Even with his many interactions with the criminal justice system, the defendant has been unwilling to modify his behavior and stop committing crimes. The defendant continues to enter the United States after being removed and continues to commit crimes after he has returned. He has been sentenced to a total of 46 months—nearly four years—for his immigration related offenses. But that did little to discourage the defendant from coming back to the United States and engaging in much more serious criminal conduct. A sentence of 147 months in prison, just over 12 years, is necessary to ensure that this defendant understands that his actions have consequences, that he does not have legal status in the United States and cannot remain here (or come back), and, most importantly, robbing innocent customers and hard-working jewelry store employees will not be tolerated. Putting others in danger for some quick cash, will be met with severe consequences.

### 4. The Need to Protect the Public from the Defendant

A guideline sentence of 147 months is also necessary to protect the public from the defendant. The instant offense was violent and wildly dangerous. Between the robbery in the jewelry store and the carjacking immediately afterwards, the defendant created a situation in which violence was not only possible, but likely. He and Torres are fortunate that no one was killed or seriously injured. The carjacking is particularly concerning and was ripe for violence. A seemingly unplanned act done in desperation to flee the area. What would have happened if the victim's in the store or the carjacking victims had resisted? What was the defendant willing to do to get away with his $150,000 booty?

His violent conduct placed innocent people in fear for their lives—something they will likely never forget. And that is the real harm here. How many people had their lives changed because of the defendant's greed and audacity? He has no job or employment history, he has no status in the United States, he has no respect for the law, and his crimes are getting progressively worse. A sentence of 147 months will prevent the defendant from continuing to commit dangerous crimes and protect the public.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to 147 months imprisonment.

Respectfully submitted,

John F. Lenzner
Acting United States Attorney

By:   /s/ *Daniel C. Gardner*
Daniel C. Gardner
Assistant United States Attorneys

March 11, 2021